FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2011 MAY 16 P 12: 28
CLERK C Adcuo
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| PHILLIP B. SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 110-052 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Phillip B. Scott ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

## I. BACKGROUND

Plaintiff applied for DIB and SSI in December of 2006, alleging a disability onset date of October 1, 2002. Tr. ("R."), pp. 127-32. The Social Security Administration denied Plaintiff's applications initially, R. 71-78, and on reconsideration, R. 85-92. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing

on August 10, 2009. R. 17-66. Plaintiff, who was represented by counsel, testified on his own behalf at the hearing. R. 23. The ALJ also heard testimony from Plaintiff's wife, Bobbie Scott, and a Vocational Expert ("VE"), Dr. William Stewart. R. 47, 52. On October 7, 2009, the ALJ issued an unfavorable decision. R. 5-16.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful employment since the alleged onset of disability (20 C.F.R. §§ 404.1517 *et seq.* & 416.971 *et seq.*).

2. The claimant has the following severe impairments: diabetes mellitus and osteoarthritis in his shoulders (20 C.F.R. §§ 404.1520(c) & 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity ("RFC") to perform a wide range of medium work,[1] except the claimant can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and is limited to frequent overhead reaching. Accordingly, the claimant is capable of performing his past relevant work as a paper truck driver.

5. In the alternative,[2] considering the claimant's age, education, work

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) & 416.967(c).

[2] Typically, when an ALJ makes a finding that leads to the conclusion that a claimant is not disabled at any step, the ALJ will conclude her analysis and not proceed to the later steps in the sequential evaluation process. See 20 C.F.R. § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.") Here, however, the ALJ made a determination at step four that Plaintiff is capable of doing his past relevant work – a determination that compels a finding that he is not disabled – yet proceeded to step five, pursuant to which she set forth

2

> experience, RFC, and the testimony of the VE, there are jobs that exist in significant numbers in the national economy that the claimant can perform, such as: machine tender, assembler, bench hand packer/sorter, and service worker (20 C.F.R. §§ 404.1569 & 416.969). Thus, the claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2002, through the date of the ALJ's decision.

R. 11-16.

When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ improperly concluded that certain of his impairments were not severe; (2) the ALJ improperly evaluated his RFC, which led to an erroneous determination that he was capable of performing his past relevant work; and (3) the ALJ failed to include all of Plaintiff's impairments and limitations in the hypothetical question posed to the VE. (See doc. no. 9 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should be affirmed. (See doc. no. 10 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence,

---

an alternative basis for her conclusion that Plaintiff is not disabled (i.e., that jobs exist in significant numbers in the national economy that the claimant can perform). R. 14-15.

Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d

1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. The ALJ's Findings Regarding Plaintiff's Severe Impairments Are Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in her determination at step two of the sequential process that his decreased vision, hypertension, and heart condition[3] were not "severe" impairments. Pl.'s Br., pp. 9-10. The Commissioner downplays the significance of the ALJ's step two determination, asserting that it is unimportant whether an ALJ classifies particular impairments as severe at step two so long as she finds the totality of impairments to be sufficiently severe to proceed to the latter steps of the sequential process. Comm'r's Br., pp. 9-10.

Because an ALJ's step two determination as to the severity of particular impairments has ramifications for the analyses to be undertaken in the subsequent steps, the Court does not endorse the characterization of step two set forth in the Commissioner's brief.[4]

---

[3] In addition to these impairments, Plaintiff refers to chest pain and shortness of breath, which the ALJ discussed as symptoms of his heart condition. See R. 11.

[4] For example, severe impairments, unlike non-severe impairments, must typically be included in a hypothetical question asked to the VE, which can effect the resolution of later steps in the sequential process. See, e.g., Loveless v. Massanari, 136 F. Supp.2d 1245, 1250-51 (M.D. Ala. 2001).

5

Nevertheless, the question remains whether the ALJ's step two determination as to the non-severity of Plaintiff's claimed impairments is supported by substantial evidence; if so, the ALJ's decision as to this issue must be affirmed.

A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects his ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). At the second step of the sequential evaluation process:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985) for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test,

> an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with [her] ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*). With these basic principles in mind, the Court turns its attention to the determinations by the ALJ challenged by Plaintiff in the instant case.

In her decision, the ALJ acknowledged Plaintiff's complaints in his initial disability report of hypertension and vision problems caused by diabetes. R. 11. Likewise, she acknowledged Plaintiff's heart condition as reported in a letter submitted by Plaintiff's

7

counsel. Id. (citing Ex. 17F). However, she found that "[t]he medical evidence in the record . . . shows that each of these impairments is non-severe because they, neither singly nor cumulatively, cause more than minimal limitation in the claimant's ability to perform basic work activities." Id. As to Plaintiff's hypertension, the ALJ substantiated her finding of non-severity with the fact that Dr. Angela Overstreet Wright, Plaintiff's primary care provider, had described Plaintiff's hypertension as benign. Id. Moreover, the ALJ noted that Dr. Winona R. Rebagay, a physician who performed a state-ordered examination, reported Plaintiff's hypertension to be "'in good control' with medication." Id. (citing Ex. 6F). Regarding Plaintiff's heart condition, the ALJ reasoned that it was not severe because "a June 18, 2009 'heart test' showed no evidence of abnormal heart function or poor circulation." Id. (citing Ex. 17F). Finally, addressing Plaintiff's complaint of vision problems, the ALJ acknowledged the possibility of blurry vision caused by diabetes, but found no severe vision-related impairment because his most recent vision test showed that Plaintiff retained 20/30 vision in his right eye and 20/40 vision in his left eye. Id. (citing Ex. 3F).

In short, the ALJ cited specific medical evidence from the record for each impairment that she determined to be non-severe. In contrast, Plaintiff's challenge to the ALJ's determination as to his severe impairments consists of allegations of error that are unsupported by credible evidence of record. For example, Plaintiff states that his "heart disorder was certainly not non-severe," in support of which he provides nothing beyond his own testimony that he suffers frequent chest pain, for which he takes the medication "NitroQuick" every one to three days. Pl.'s Br., p. 9 n.4. Elsewhere, Plaintiff asserts, in

conclusory fashion, that "people who take Nitro[Q]uick and who have stents[5] do have severe heart impairments . . . ." Id. at 10. Similarly, Plaintiff complains that the ALJ improperly discounted the severity of his vision impairment because she did not acknowledge his testimony that he has difficulty seeing at night. Id. at 10; R. 27.

Plaintiff's arguments are unpersuasive. Plaintiff points to no medical evidence demonstrating how his hypertension, vision impairment, or heart condition – or the symptoms caused by these impairments – affect his ability to perform work activities. As noted by the Commissioner, Dr. Wright's treatment notes reflect Plaintiff's complaints of chest pains caused by his heart condition, but do not indicate any functional limitations associated with his heart condition or the symptoms resulting from such condition. See R. 228-35, 278-81, 316-22, 341-42. Plaintiff's contention regarding the ALJ's assessment of his vision is inadequate because the ALJ properly determined, based on medical evidence in the record, that Plaintiff's eye impairment was not severe; Plaintiff's reference to his own testimony regarding his inability to see at night does not show that this determination is unsupported by substantial evidence, especially where the ALJ discounted Plaintiff's testimony as to the limiting effects of his alleged vision impairment in a credibility determination that Plaintiff has not called into question. See R. 12-13.

The Court is mindful that Plaintiff's burden to show the severity of a particular impairment is not a heavy one. See McDaniel, 800 F.2d at 1031. Here, however, the ALJ's determination that Plaintiff failed to meet that burden as to the impairments at issue is supported by substantial evidence. Accordingly, the Court finds that this issue provides no

---

[5]Plaintiff testified that a stent was implanted into his heart in 2007. R. 28.

9

basis for remand.

### B. The ALJ's RFC Finding Is Supported by Substantial Evidence

Plaintiff argues that the ALJ improperly evaluated his RFC, which led to an erroneous determination that he was capable of performing his past relevant work as a paper truck driver.[6] See Pl.'s Br., pp. 9-10. Plaintiff's first allegation of error as to the ALJ's RFC assessment is that it was flawed because of the ALJ's failure to properly ascertain his severe impairments. See Pl.'s Br., pp. 9-11. However, as discussed above, the ALJ's decision as to the severity of Plaintiff's impairments was supported by substantial evidence, see supra Part III.A; this allegation of error is therefore without merit. Next, Plaintiff argues that the ALJ failed to account for Plaintiff's vision problems – specifically his inability to see at night – as well as Plaintiff's foot and leg pain, which resulted from his diabetes and which, according to Plaintiff, sometimes made it difficult for him to feel the gas and break pedals while driving. Id. at 9-10. In addition, Plaintiff asserts that the ALJ ignored the fact that he suffered chest pain, for which he frequently takes NitroQuick, and that the ALJ gave insufficient consideration to the limiting effects of his osteoarthritis, despite having found it to be a severe impairment. Id. The Commissioner maintains that the ALJ properly considered all of Plaintiff's impairments in assessing his RFC, and further argues that the ALJ's RFC assessment is consistent with the relevant medical evidence. Comm'r's Br., pp. 6-8. The Commissioner has the better argument.

---

[6]Plaintiff also challenges to the ALJ's finding that he could return to his past relevant work on the grounds that his diabetes disqualified him from renewing his commercial driver's license ("CDL"), which is required to be a paper truck driver. Pl.'s Br., pp. 9-10. As noted below, the Court finds it unnecessary to reach the merits of this contention.

10

Contrary to Plaintiff's contentions, the ALJ acknowledged Plaintiff's testimony that his vision problems prevented him from driving and that he suffered numbness and tingling in his lower extremities. R. 12. Likewise, the ALJ discussed Plaintiff's testimony as to the limiting effects of his arthritis and cardiorespiratory impairments, noting that Plaintiff testified that such impairments, along with his other disorders, limit his ability to sit or stand for extended periods and restrict various other activities. See R. 13. Evaluating Plaintiff's subjective complaints of pain and other subjective symptoms under the standard set forth in Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*),[7] the ALJ found that Plaintiff's impairments could reasonably be expected to cause these symptoms; however, the ALJ found Plaintiff's testimony as to the intensity, persistence, and limiting effects of these symptoms was not credible. R. 13.

Plaintiff points to no deficiency in the ALJ's Holt analysis, and he offers nothing that calls into question the ALJ's credibility determination regarding the limiting effects of his symptoms. In addition, though Plaintiff appears to take issue with the ALJ's failure to mention that he takes the medication "NitroQuick," he does not explain why this omission is significant. That is, Plaintiff does not assert that his medication causes any particular side effects, or that it limits his functional capacity in any way. Cf. Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981) (acknowledging the potential for medication to render

---

[7]Under the standard set forth in Holt for evaluating complaints of pain and other subjective symptoms, a claimant must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed pain or restriction. 921 F.2d at 1223.

11

claimant disabled where various medications were prescribed that allegedly caused serious side effects).

Plaintiff's assertion of error regarding the limiting effects of the arthritis in his shoulder is similarly unavailing. The ALJ determined that Plaintiff's shoulder arthritis hindered his ability to reach overhead, but that he retained the ability to lift and carry up to fifty pounds occasionally; the ALJ incorporated this determination into her RFC assessment. R. 12. In support of her RFC findings regarding Plaintiff's shoulder arthritis, the ALJ cited the May 9, 2007 report by Dr. Rebagay indicating that Plaintiff retained a good range of motion in all joints and rating his motor strength four out of five in his upper extremities; she also referred to Dr. Wright's range of motion questionnaire discussing the overall normal range of motion in Plaintiff's joints, as well as shoulder x-rays taken in conjunction with the February 26 and July 26, 2007 examinations. R. 13 (citing various exhibits). Plaintiff's challenge to this determination by the ALJ is limited to an unsupported assertion that the "osteoarthritis in his shoulders . . . should have a significant effect on Plaintiff's ability to operate, drive and steer trucks." R. 10 (emphasis added). This assertion is plainly inadequate to justify a finding of error. The medical reports cited by the ALJ in support of her evaluation of Plaintiff's shoulder arthritis constitutes substantial evidence supporting her finding regarding this impairment, and Plaintiff points to nothing in the record that contradicts the record evidence cited by the ALJ.

Furthermore, as the Commissioner persuasively argues in his brief, the ALJ's RFC assessment is supported by the entire medical record. The ALJ reviewed Dr. Wright's treatment notes and observed that there is no indication of Plaintiff's diabetes having caused

12

any condition that would severely limit his functionality.[8] R. 13. Plaintiff does not challenge this summation by the ALJ of his treating physician's notes relating to his diabetic condition.

In addition, the ALJ properly assigned "some weight" to the opinions of Dr. John Hassinger and Dr. C.E. Kossman, agency-employed physicians who reviewed Plaintiff's treatment history and provided functional assessments indicating that Plaintiff is capable of a limited range of medium work. Id. (citing Exs. 8F & 13F). As is appropriate in the consideration of opinions by non-examining physicians, the ALJ only relied on the assessments of Dr. Hassinger and Dr. Kossman upon determining that they were consistent with the record evidence as a whole, including the evidence from treating sources. See Spencer ex rel. Spencer v. Heckler, 765 F.2d 1090, 1093-94 (11th Cir. 1985) (*per curiam*) (noting that opinions of non-examining physician may be not be given significant weight if they are contrary to evidence provided by treating sources).

Plaintiff complains that the ALJ's reliance on Dr. Hassinger's functional assessment was improper because such assessment was made without the benefit of later-submitted

---

[8]The ALJ also noted, "In a letter dated October 5, 2006, Dr. Wright opined that [Plaintiff] had been unable to return to work since February 2006 due to hypertension and diabetic complications." R. 13, 223. The Commissioner argues, and the Court agrees, that the ALJ properly afforded Dr. Wright's October 5, 2006 letter little weight, as it was conclusory in nature, unsupported by record medical evidence, and contradicted by her own treatment notes, in which she described Plaintiff's hypertension as "benign" and did not describe any functional limitations resulting from his diabetes. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (noting that a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records). Moreover, to the extent that Dr. Wright's October 5th letter offered an opinion as to the legal issue of whether Plaintiff was disabled, it was not entitled to significant consideration, as that issue is reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(1). Notably, Plaintiff does not challenge the weight accorded to Dr. Wright's October 5th letter by the ALJ.

medical evidence. Pl.'s Br., p. 12 & n.5. However, Plaintiff does not explain how any of the later evidence contradicts Dr. Hassinger's report, see id., and he offers nothing to refute the Commissioner's assertion that "[t]he newer evidence not seen by Dr. Hassinger did not show any permanent (or prolonged) deterioration in Plaintiff's condition." Comm'r's Br., p. 7. Because Plaintiff has not shown any medical evidence – much less evidence from a treating source – that contradicts Dr. Hassigner's functional assessment, his complaint regarding that assessment is without merit. Cf. Spencer, 765 F.2d at 1094 (finding error where ALJ relied upon evidence from non-examining physician and rejected contrary opinion by treating physician without explanation).

In short, the ALJ's finding as to Plaintiff's RFC was based on a proper evaluation of Plaintiff's subjective complaints and is consistent with the record evidence as a whole. Accordingly, it is supported by substantial evidence. Having determined that the RFC assessment was properly made, the Court rejects Plaintiff's contention that the ALJ's RFC assessment led to an improper determination that Plaintiff was capable of performing his past relevant work as a paper truck driver.

As noted above, Plaintiff also asserts that the ALJ's finding that he was capable of performing his past work as a paper truck driver was improper because she failed to account for the fact that his diabetes and insulin treatments have disqualified him from holding a CDL. Pl.'s Br., p. 9. Plaintiff testified that he was initially unable to renew his CDL in 2006 because, due to his diabetic condition, his blood pressure and blood sugar levels were impermissibly high. R. 44. Then, around May of 2009, Plaintiff was prescribed insulin, which foreclosed the possibility of obtaining a CDL for as long as such treatment continued.

14

Tr. 44; 49 C.F.R. § 391.41(b)(3) (providing that a person is not physically qualified to drive a motor vehicle if he has an "established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control").

The Commissioner disputes the notion that Plaintiff's testimony about the initial loss of his CDL is sufficient to carry his burden of showing he could not perform his past relevant work. Comm'r's Br., p. 4. However, because Plaintiff was barred from obtaining a CDL as soon as he began taking insulin, the Commissioner "acknowledges that a real issue as to his ability to perform his past work arose as of that time." Id. at 5. The Commissioner further states that his stance on this issue is currently under review in light of the recent decision in Berry v. Astrue, 622 F.3d 1228, 1232 (9th Cir. 2010), in which the Ninth Circuit found that the ALJ erred by failing to consider whether the claimant's prescribed pain medication would render him incapable of passing a drug test required to qualify for his past work as a courier. Id. In light of these considerations, the Commissioner asks the Court affirm the ALJ's conclusion that Plaintiff was not disabled solely on the basis of her step five determination that Plaintiff was capable of other work in the national economy. Id.

The Court finds it appropriate to follow the approach suggested by the Commissioner. The Court recognizes that Berry, *supra*, along with other recent case law,[9] provides persuasive authority for the position that the ALJ erred in finding Plaintiff capable of performing his past relevant work as a paper truck driver despite the fact that his prescribed

---

[9] See, e.g., Pollaccia v. Comm'r of Soc. Sec., No. 9-cv-14438, 2011 U.S. Dist. LEXIS 6901, at *24-25 (E.D. Mich. Jan. 6, 2011) (remanding case where ALJ found, *inter alia*, that Plaintiff was capable of performing past work as bus driver despite being prescribed medications that disqualified her from holding a CDL).

15

treatment disqualified him from holding a CDL. However, the ALJ did not end her analysis at step four of the sequential process. Rather, she proceeded to step five and found that Plaintiff was capable of other work in the national economy, thus providing an alternative basis for her conclusion that Plaintiff was not disabled. R. 14-15. Because the Court finds below that the ALJ's step five determination is supported by substantial evidence, see infra Part III.C, the Court finds it inappropriate to reach the CDL issue. In other words, even if the ALJ erred by failing to consider the CDL disqualification in her step four analysis, her proper step five determination provides an adequate basis to support her ultimate decision that Plaintiff was not disabled.[10]

### C. The ALJ Properly Relied Upon the VE's Testimony

Plaintiff's final contention of error is that the ALJ's reliance on the testimony provided by the VE at the hearing was improper because the hypothetical question presented by the ALJ did not include all of Plaintiff's limitations. Pl.'s Br., pp. 11-13. Specifically, Plaintiff contends that the ALJ's hypothetical, like her RFC assessment, was improper because it was based on Dr. Hassinger's functional assessment, which was made prior to the submission of other medical evidence. Id. at 11-12. Furthermore, Plaintiff contends, somewhat confusingly, that the ALJ erred by asking an initial hypothetical question with too few limitations and then proceeding to ask a hypothetical question based on the assumed

---

[10]Consistent with the Court's decision not to reach the CDL issue, the Court also declines to address the Commissioner's contention that Plaintiff did not become incapable of performing his past relevant work as a truck driver until his insulin treatment began – i.e., that he failed to show that he was incapable of his past work by merely testifying that he initially lost his CDL due to elevated blood sugar levels and high blood pressure. See Comm'r's Br., p. 5.

truth of Plaintiff's testimony, without presenting a question with "intermediate limitations." Id. at 12-13. Essentially, Plaintiff asserts that the initial hypothetical question did not account for all of his limitations and that the second hypothetical was of no use because, contrary to the ALJ's later findings, it assumed that Plaintiff's subjective testimony was credible. The Commissioner disputes these contentions and maintains that the ALJ had an adequate evidentiary basis for the hypothetical questions presented to the VE. Comm'r's Br., pp. 6-8, 10.

As noted above, the ALJ determined in her RFC assessment that Plaintiff was able to perform a wide range of medium work, except the claimant could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and was limited to frequent overhead reaching. R. 12. With regard to a step five determination, the Commissioner has the burden has to show the existence of other types of substantial gainful employment that Plaintiff could perform given his age, education, previous work experience, and residual functional capacity. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). In this regard, the ALJ properly consulted a VE in conjunction with the Medical-Vocational Guidelines.

The record reflects that the ALJ asked the VE a hypothetical question in which he was instructed to consider an individual of the same age, education and work experience as Plaintiff who retained the capacity "to occasionally lift 50 pounds, frequently lift 25; would be able to stand and walk about six hours in an eight-hour workday and had an unlimited ability to push and pull." R. 58-59. The VE was further instructed to assume that the individual would only occasionally be able to climb and that he would be restricted to "frequent" overhead bilateral reaching. R. 59. Based on these assumptions, the VE was

17

asked if he could "identify other work that would be consistent with these limitations." R. 60. The VE testified that he could, and proceeded to identify the jobs of machine tender, assembler, bench hand packer/sorter, and service worker, which he testified were "light jobs" that partially overlap into the "medium" exertion level. Id. The ALJ then instructed the VE to assume that Plaintiff's testimony from the hearing "is found to be credible and verified by the administrative record" and asked him whether an individual with Plaintiff's claimed limitations would be able to perform the jobs the VE had identified. R. 62. The VE answered in the negative, indicating that such an individual would "need to be under medical care as opposed to being able to work on a reliable, sustained basis." Id.

Of course, the underlying assumptions of hypothetical questions must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) (*per curiam*); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (*per curiam*); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); Coleman v. Barnhart, 264 F. Supp.2d 1007, 1011 (S.D. Ala. 2003) (failing to comprehensively describe a claimant's impairments and limitations is grounds for remanding case for further proceedings).

Here, Plaintiff's first argument concerning the initial hypothetical question posed to the VE – that it was improperly based on Dr. Hassinger's functional assessment – fails for the reasons set forth above with regard to the same argument regarding the ALJ's RFC assessment. See supra Part III.B. The Court likewise rejects Plaintiff's contention that the

18

ALJ erred by asking an initial hypothetical question with too few limitations and asking a question based on the assumed truth of Plaintiff's testimony, without presenting a question with intermediate limitations. First, while Plaintiff avers that he "definitely had more limitations and impairments that [sic] set forth in the original question," he fails to specify any particular limitation or impairment not included in the initial hypothetical question. See Pl.'s Br., p. 12. Furthermore, having properly found certain of Plaintiff's impairments non-severe, see supra Part III.A., and having found Plaintiff's testimony as to certain impairments not credible, see supra Part III.B, the ALJ properly excluded such information from her initial hypothetical question. Loveless, 136 F. Supp.2d at 1250-51 ("[T]he hypothetical question posed by the ALJ may omit non-severe impairments."); Martinson v. Shalala, 843 F. Supp. 1448, 1450-51 (M.D. Fla. 1994) (evidence properly found to be not credible need not be included in hypothetical question). In addition, the Court finds that the ALJ did incorporate Plaintiff's severe impairments and her properly made RFC assessment into the initial hypothetical question, such that no error occurred in the formulation of that question.

Finally, the Court notes that Plaintiff's counsel was present at the hearing and had an opportunity to examine the VE. R. 17. Plaintiff's counsel took advantage of that opportunity, and he indicated at the conclusion of his examination that he had asked all the questions that he had for the VE. R. 64. Indeed, Plaintiff's counsel asked modified versions of the ALJ's hypothetical question that incorporated limitations regarding impairments that the ALJ had not included. See R. 63-64. Thus, Plaintiff cannot claim that the record does not reflect the VE's testimony as to the impairments alleged by Plaintiff. However, as discussed above, the ALJ did not find all of these alleged impairments severe and did not

find all of Plaintiff's testimony as his limitations credible, and Plaintiff has not identified any specific impairment or limitation improperly omitted from the ALJ's initial hypothetical question.

In sum, the ALJ's initial hypothetical question adequately accounted for Plaintiff's characteristics, meaning that the ALJ properly relied upon the VE's testimony in response to that question. Accordingly, the ALJ's step five determination as to Plaintiff's ability to perform other work is supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 16th day of May, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE